[No. S027645. Nov. 12, 1992.]

In re ROBERT PAUL WILSON on Habeas Corpus.

## COUNSEL

Munger, Tolles & Olson, Bradley S. Phillips, Amalie Moses Reichblum and Jana Winograde for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Harry Joseph Colombo, Deputy Attorneys General, for Respondent.

## OPINION

**GEORGE, J.**—While his appeal from a judgment imposing the death penalty was pending before this court, petitioner Robert Paul Wilson filed the petition for writ of habeas corpus which gave rise to the present proceeding. As noted in our opinion in the accompanying decision in the appeal (*People* v. *Wilson, ante,* p. 926 [13 Cal.Rptr.2d 259, 838 P.2d 1212]), the habeas corpus petition reiterated petitioner's contention, raised on appeal, that numerous failings by his trial counsel deprived him of his constitutional right to the effective assistance of counsel. Concluding that the petition stated a prima facie claim for relief, we issued an order to show cause returnable before this court and ordered that the matter be argued with the automatic appeal.

For the reasons discussed hereafter, we conclude that petitioner's claim is meritorious and that the judgment must be set aside in its entirety.

### FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background leading to petitioner's conviction, sentence of death, and the present habeas corpus proceeding, is set forth in full in the companion case of *People* v. *Wilson, supra, ante,* at pages 931 to 935 and need not be repeated here.

In the habeas corpus petition, petitioner alleges, among other things, that he was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment to the federal Constitution and article I, section 15, of the California Constitution, because his trial counsel provided deficient representation in numerous respects, which included the failure: (1) to object to or in any other way seek exclusion from evidence of the testimony of inmate Donald Raymond Loar and government witness Frank Kovacevich, and the tape recordings of telephone conversations between petitioner and Kovacevich; (2) to investigate evidence which would have undermined the reliability of the testimony of Loar and inmate Farrell Torregano; (3) to cross-examine Torregano; and (4) to give a competent closing argument.[1]

Concluding the petition stated a prima facie case entitling petitioner to habeas corpus relief, we issued an order to show cause, directing the filing of a return and a traverse. We determined, on the basis of the return and the traverse, that there were no disputed factual issues requiring an evidentiary hearing with respect to the ineffective-assistance-of-counsel claim that was based upon trial counsel's failure to raise an objection under *Massiah* v. *United States* (1964) 377 U.S. 201, 206 [12 L.Ed.2d 246, 250-251, 84 S.Ct. 1199], and *Massiah*'s progeny, to the testimony of Loar and Kovacevich and the tape recordings.

As we explain, we conclude that petitioner's claim of ineffective assistance of counsel, based upon counsel's failure to raise a *Massiah* objection to the testimony and tape recordings, has merit and that petitioner is entitled to habeas corpus relief on that ground. We therefore need not and do not discuss the other alleged failings of trial counsel set forth in the habeas corpus petition.

## DISCUSSION

Petitioner contends he was deprived of effective assistance of counsel guaranteed by the Sixth Amendment to the federal Constitution and by article I, section 15, of the California Constitution, because his counsel failed to object to the admission of the testimony of Loar and Kovacevich, relating petitioner's incriminating statements, and to the tape recordings of the telephone conversations between petitioner and Kovacevich. Petitioner contends this evidence, as the product of state action deliberately designed to elicit from him incriminating statements in the absence of counsel, was inadmissible under *Massiah* v. *United States, supra*, 377 U.S. 201, 206 [12 L.Ed.2d 246, 250-251], and its progeny.

---

[1] Petitioner further alleges that these failings by trial counsel resulted in a conviction and sentence of death in violation of his rights under the Fifth, Eighth, and Fourteenth Amendments to the federal Constitution.

To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693, 104 S.Ct. 2052]; *People* v. *Mitcham* (1992) 1 Cal.4th 1027, 1057-1058 [5 Cal.Rptr.2d 230, 824 P.2d 1277].) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra*, 466 U.S. at p. 694 [80 L.Ed.2d at pp. 697-698].)

In the present case, the Attorney General argues with respect to the first prong, i.e., deficient performance of trial counsel, that petitioner's contention fails because the *Massiah* claim cannot be sustained on its merits, and, thus, trial counsel was not deficient in failing to raise a nonmeritorious objection. The Attorney General further argues, with respect to the second prong, i.e., prejudice, that even if counsel's performance was deficient, the failure to raise the *Massiah* objection was not prejudicial under the applicable standard. We address each of these points in turn.

A. *Merits of the Massiah claim.*

In *Massiah, supra*, 377 U.S. 201, the United States Supreme Court held that once an adversary criminal proceeding has been initiated against the accused, and the defendant's constitutional right to the assistance of counsel has attached, any incriminating statement the government deliberately elicits from the defendant in the absence of counsel is inadmissible at trial against that defendant. (*Id.*, at pp. 206-207 [12 L.Ed.2d at pp. 250-251].) Subsequent to its decision in *Massiah*, the high court elucidated the scope of its proscription against affirmative governmental conduct designed to elicit incriminating statements from a defendant entitled to the assistance of counsel. In *Kuhlmann* v. *Wilson* (1986) 477 U.S. 436 [91 L.Ed.2d 364, 106 S.Ct. 2616], the court stated that in order to prevail on a *Massiah* claim involving use of an informant, the defendant must demonstrate that both the government and the informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks. (477 U.S. at p. 459 [91 L.Ed.2d at pp. 384-385].) For example, no violation of *Massiah* occurs where an informant-cellmate is simply a "listening post" and does not ask questions or solicit information. (*Id.*, at pp. 459-460 [91 L.Ed.2d at pp. 384-385]; *People* v. *Hovey* (1988) 44 Cal.3d 543, 561 [244 Cal.Rptr. 121, 749 P.2d 776].)

Furthermore, attachment of the right to counsel with regard to one charge does not immunize a defendant from investigation of other criminal conduct,

and "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are . . . admissible at a trial of those offenses." (*Maine* v. *Moulton* (1985) 474 U.S. 159, 180, fn. 16 [88 L.Ed.2d 481, 498-499, 106 S.Ct. 477]; see *McNeil* v. *Wisconsin* (1991) 501 U.S. __, __ [115 L.Ed.2d 158, 166-167, 111 S.Ct. 2204, 2207]; *People* v. *Sully* (1991) 53 Cal.3d 1195, 1234 [283 Cal.Rptr. 144, 812 P.2d 163].) Incriminating statements obtained in circumvention of a defendant's right to counsel with respect to a charged offense, however, are inadmissible at the trial *of that charged offense* even if they pertain to a new and uncharged crime. (*Maine* v. *Moulton, supra,* 474 U.S. at pp. 178-180 [88 L.Ed.2d at pp. 497-499]; *Mealer* v. *Jones* (2d Cir. 1984) 741 F.2d 1451, 1453-1454.)

*Maine* v. *Moulton, supra,* 474 U.S. 159, illustrates the foregoing principles. There, Moulton pleaded not guilty to charges of theft. He subsequently met with his codefendant, Colson, to prepare for the upcoming trial. According to Colson, Moulton suggested the possibility of killing a state witness. Thereafter, Colson met with the police and confessed to his participation with Moulton in the commission of the thefts, agreeing to testify against Moulton and cooperate with the police if no further charges would be brought against him. He told the police about Moulton's proposal to kill the witness.

Having learned from recorded telephone conversations that Colson and Moulton were going to meet in order to plan defense strategy, the police obtained Colson's consent to be equipped with a body-wire transmitter to enable the officers to record the meeting. A government officer later testified at trial that one of the purposes in doing so was to record any further conversations relating to threats to witnesses. Although Colson was instructed not to attempt to question Moulton, Colson's remarks during the meeting in fact tended to elicit incriminating statements from Moulton relating to the pending charges. Moulton also referred to, but then rejected, the idea of eliminating witnesses.

At trial, the state offered into evidence portions of the tape recordings of this meeting relating to the pending charges. The state did not offer the portion during which the two men discussed the possibility of killing witnesses. Following a conviction and appeal, the high court reversed, holding the state had violated Moulton's Sixth Amendment right to counsel when it arranged to record conversations between Moulton and its undercover informant, Colson. The court stressed that "because Moulton thought of Colson only as his codefendant, Colson's engaging Moulton in active conversation about their upcoming trial was certain to elicit statements that Moulton would not intentionally reveal—and had a constitutional right not

to reveal—to persons known to be police agents. Under these circumstances, Colson's merely participating in this conversation was 'the functional equivalent of interrogation.' " (*Maine* v. *Moulton, supra,* 474 U.S. at p. 177, fn. 13 [88 L.Ed.2d at pp. 496-497].)

The court then addressed the government's argument that the incriminating statements made by Moulton properly were admitted because the police had had a legitimate reason to investigate Moulton's alleged plan to kill a witness. The court's analysis of this issue is particularly pertinent to our resolution of petitioner's claim in the present case.

Although recognizing that law enforcement officers investigating an individual already charged with certain crimes may have a legitimate interest in investigating new or anticipated crimes, the court held that the government's investigative powers, in seeking evidence relating to the *pending* charges, were limited by the Sixth Amendment rights of the accused. Consequently, incriminating statements pertaining to pending charges were held to be inadmissible at the trial of those charges, even though obtained incident to an investigation of other suspected criminal activity for which no charges were pending, if in obtaining this evidence the government improperly circumvented the accused's right to the assistance of counsel. (*Maine* v. *Moulton, supra,* 474 U.S. at pp. 179-180 [88 L.Ed.2d at pp. 497-499].) The court noted that incriminating statements pertaining to the other uncharged criminal activity would be admissible at a trial of such other crimes. (*Id.,* at p. 180, fn. 16 [88 L.Ed.2d at pp. 498-499].)

In the present case, we agree with the Attorney General's contention that, under the foregoing federal decisions, Loar's initial jailhouse conversations with petitioner, prior to his contacting the district attorney's office, did not violate petitioner's federal or state constitutional right to counsel. Loar, prior to contacting the district attorney's office, was not acting as a government agent; petitioner does not allege that either the police or the district attorney requested at that time that Loar solicit information from petitioner, or that either agency had any contact whatsoever with Loar relating to petitioner (or to the present murder prosecution) prior to Loar's telephone call to the district attorney's office. Accordingly, petitioner's statements to Loar, concerning petitioner's desire to find a "hit man" to eliminate a possibly troublesome witness in his murder case, were not elicited improperly from him by a government agent. (See *People* v. *Williams* (1988) 44 Cal.3d 1127, 1141 [245 Cal.Rptr. 635, 751 P.2d 901] [police policy of encouraging inmates to provide useful information does not transform them into government agents].) The proscriptions of *Massiah* v. *United States, supra,* 377 U.S. 201, therefore do not apply to Loar's testimony

relating the incriminating statements made by petitioner to Loar prior to the latter's telephone call to the district attorney's office.

On the other hand, we reject the Attorney General's claim that *Massiah* and its progeny do not render inadmissible Kovacevich's testimony and the tape recordings of Kovacevich's conversation with petitioner, or Loar's testimony relating petitioner's statements (and describing petitioner's demeanor) following the recorded telephone conversations.

Acknowledging that Kovacevich, unlike Loar, was a government agent from the outset, the Attorney General nonetheless advances a number of theories to support his argument that Kovacevich's conversations with petitioner did not violate *Massiah v. United States, supra,* 377 U.S. 201. We consider each of these arguments in turn.

The Attorney General initially asserts that because it was petitioner, and not a government agent, who initiated the contact with Kovacevich by asking Loar to find an assassin, the incriminating remarks cannot be considered the product of deliberate governmental action. A similar argument, however, was made and rejected in *Maine v. Moulton, supra,* 474 U.S. 159. In *Moulton,* the state argued that the *Massiah* rule applies only when the police arrange the conversation between the accused and the police agent in which the incriminating statements are elicited; because the defendant Moulton rather than his codefendant Colson requested the critical meeting at which the incriminating remarks were made, the state maintained no violation of Moulton's Sixth Amendment rights occurred. The high court disagreed, holding that the identity of the party who instigates the meeting at which the government obtains incriminating statements is not a decisive factor, or even an important one. (474 U.S. at p. 174 [88 L.Ed.2d at pp. 494-495].) In the present case, although petitioner instigated the telephone call, Kovacevich actively engaged him in conversation by impersonating an assassin and making inquiries as to petitioner's plan.

In his return to the petition, the Attorney General asserts that *People v. Catelli* (1991) 227 Cal.App.3d 1434 [278 Cal.Rptr. 452] provides support for his interpretation of the *Massiah* line of authority. In *Catelli,* the cellmate of the defendant contacted the district attorney's office, informing that office that the defendant had confessed to him the crimes with which the defendant was charged and had expressed a desire to intimidate certain anticipated prosecution witnesses. Ultimately an undercover police officer arranged to meet with the defendant at the jailhouse and to impersonate a friend of the cellmate who would be willing to intimidate the witnesses. The meeting took place in the visiting room of the jailhouse. After the police officer identified

himself as the friend of the cellmate, the defendant displayed two handwritten notes stating that he wanted someone to intimidate the prosecution's witnesses. The defendant then discussed with the officer the content of the notes, and the discussion was surreptitiously tape-recorded.

At trial, over defense objection, the handwritten notes and the tape recordings were admitted into evidence. Following his conviction of the charged offenses, the defendant appealed, asserting the admission of the notes and tape recordings violated his rights under *Massiah*. The court upheld the admission of the notes, concluding that the defendant had displayed them on his own initiative without government elicitation. The court, however, further concluded that the admission of the tape-recorded conversation, during which the officer asked a number of questions designed to elicit incriminating statements from the defendant, constituted *Massiah* error. (*People* v. *Catelli, supra,* 227 Cal.App.3d at p. 1444.) The court finally concluded that the *Massiah* error was harmless on the facts of that case. (*Id.,* at p. 1445.)

The Attorney General contends Kovacevich's conduct in the course of the tape-recorded telephone conversations with petitioner is comparable to the police officer's passive observation of the notes displayed by the defendant in *People* v. *Catelli, supra,* 227 Cal.App.3d 1434. We disagree. Assuming, without deciding, that *Catelli* properly applied *Massiah* and its progeny in upholding the admission of the notes displayed by the defendant in that case, we conclude *Catelli* is inapposite to the circumstances of the present case. Here, Kovacevich clearly did not act as a passive listening post in his telephone conversations with petitioner but, as we have stated, affirmatively impersonated a "hit man" and actively participated in the conversations.

The Attorney General finally argues that evidence of petitioner's telephone conversations with Kovacevich was admissible because it pertained solely to an anticipated crime—the plan to eliminate a potential witness— and not to the crimes with which he was charged. The Attorney General again misconstrues *Maine* v. *Moulton, supra,* 474 U.S. 159, which, as already explained, holds that government agents may elicit incriminating statements from a defendant concerning suspected crimes other than pending charges, but that such statements are *not* admissible against the defendant at the trial of the *pending* charges, because, at the time such evidence was elicited, the defendant was entitled to the assistance of counsel with respect to those charges. In the present case, petitioner's remarks, although they do not refer directly to the charged offenses of murder and robbery, were highly incriminating as to the pending charges and were elicited in direct violation of petitioner's right to counsel with respect to those charges. Therefore,

evidence relating these remarks was inadmissible at the trial of the pending charges.

 For these reasons, although we agree with the Attorney General that, in light of the merits of the *Massiah* claim, defense counsel was not deficient in failing to object to the testimony of Loar relating the incriminating statements made by petitioner *prior* to Loar's contacting the district attorney's office, we cannot so conclude with regard to defense counsel's failure to object to the testimony of Kovacevich, to the remaining testimony of Loar, or to the tape recordings of petitioner's telephone conversations with Kovacevich. Governing decisions of the United States Supreme Court compel the conclusion that this evidence should have been excluded.

The Attorney General does not contend that trial counsel's failure to seek exclusion of the highly incriminating testimony and tape recordings was the result of a considered or informed tactical decision. Indeed, the declaration of petitioner's trial counsel (Ronald Slick), attached as an exhibit in support of the return, precludes any such assertion. In his declaration, trial counsel states that his omission was based upon his legal opinion that such evidence was properly admissible. He declares: "[I] did not enter an objection to this evidence because I believed then, as I do now, that this evidence was clearly admissible. That is, I did not believe then nor do I now, that there was any colorable argument for excluding this testimony. [¶] I am conversant with the decisions in *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], and *Maine* v. *Moulton* (1985) 474 U.S. 159 [88 L.Ed.2d 481, 106 S.Ct. 477], and I do not believe that these cases provide any basis whatsoever for excluding the testimony of Mr. Loar and Mr. Kovacevich. In my view, this testimony was simply foundational, that is, needed to authenticate the tape recordings of the phone conversations between these witnesses and the defendant. Thus, since I felt that the tapes were admissible, and would be admitted over any objection that I might interpose, I did not feel obliged to object to the testimony of the witnesses that would lay the foundation for the tapes as such an objection would only be an exercise in futility."

Trial counsel's declaration establishes that his failure to object at petitioner's 1988 trial to the testimony and tape recordings was not based on an informed and considered tactical determination, but resulted instead from ignorance or an erroneous interpretation of previously decided, controlling United States Supreme Court cases.[2] Counsel's failure to raise a meritorious objection to incriminating evidence as a result of ignorance or misunderstanding of the holding of clearly applicable precedent of the United States

---

[2]Prior to *Maine* v. *Moulton, supra,* 474 U.S. 159, there was a conflict among federal circuit courts of appeal as to whether incriminating statements made by a defendant relating to a

Supreme Court, rather than because of an informed tactical determination, constitutes deficient performance, i.e., representation which falls below the standard of competence demanded of criminal defense attorneys. (See *People* v. *Robertson* (1982) 33 Cal.3d 21, 41-42 [188 Cal.Rptr. 77, 655 P.2d 279]; *People* v. *Pope* (1979) 23 Cal.3d 412, 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

Thus, on the basis of trial counsel's uncontradicted declaration provided by the Attorney General, we conclude that petitioner has met his burden of establishing the first prong of his ineffective-assistance-of-counsel claim, deficient performance on the part of his trial attorney.

B. *Prejudice.*

The Attorney General maintains that even if trial counsel's failure to raise a *Massiah* objection constituted deficient performance, such omission was not prejudicial to petitioner because of the assertedly strong circumstantial evidence, independent of the objectionable testimony and tape recordings, of petitioner's guilt.

█ As stated previously, to obtain relief on the basis of ineffective assistance of counsel, a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." (*Strickland* v. *Washington, supra,* 466 U.S. 668, 693 [80 L.Ed.2d 674, 697].) Rather, the defendant must establish a reasonable probability that, but for counsel's errors, the result would have been more favorable to the defendant. A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Id.,* at p. 694 [80 L.Ed.2d at pp. 697-698].)

█ We conclude that counsel's failing was prejudicial under this standard. Nothing in the prosecution's case directly linked petitioner to the crimes. At the time of his arrest, petitioner was not found in possession of the victim's trucker's wallet or any other item associated with the victim or the crimes. There was no evidence that petitioner displayed large amounts of cash or new possessions when he appeared in Tucson a few days after the victim's body was found. Furthermore, there was no evidence that petitioner was present with the victim at or around the time of the commission of the

---

charged offense are admissible, notwithstanding *Massiah* v. *United States, supra,* 377 U.S. 201, at the trial of that offense if they were obtained coincidentally in the course of an investigation of a new, uncharged crime. (See, e.g., *United States* v. *DeWolf* (1st Cir. 1982) 696 F.2d 1; *Grieco* v. *Meachum* (1st Cir. 1976) 533 F.2d 713, 717; cf. *Mealer* v. *Jones, supra,* 741 F.2d 1451.) In *Maine* v. *Moulton, supra,* 474 U.S. 159, decided three years prior to the 1988 trial in the present case, the United States Supreme Court resolved that conflict, holding that such statements are inadmissible at the trial of the charged offense.

crimes. Although it was established that petitioner often accompanied the victim on his trips to California, and the prosecution witness Berrie identified petitioner's photograph as depicting the man who was with the victim the day before the victim's body was found, Berrie was unable to make an in-court identification of petitioner as that man and, in fact, in court identified another person as the individual in question.

Although Loar testified to petitioner's statements (made prior to Loar's contacting the district attorney's office) that petitioner was looking for a "hit man" to eliminate a witness, Loar's testimony was far from being unimpeached, in that he admitted on direct examination that he was a convicted felon who had testified at the request of the Los Angeles County District Attorney in other cases prior to his testimony in the present case.

Finally, although Torregano testified that petitioner had confessed commission of the crimes, Torregano's testimony, like that of Loar, did not go unimpeached. On direct examination, he admitted having "suffered a felony or two," and petitioner's trial counsel during closing summation argued without objection by the prosecution that the jury should disregard this witness's testimony because he was in custody with serious charges pending against him and had something to gain by contacting the police regarding petitioner's case.

Moreover, evidence *was* received which tended to link parties other than petitioner to the commission of the crimes. Shortly after the victim's body was found in California, Wayne Anderson, known to be "broke," was observed with a new van, and he and Sonia Craven disappeared from Tucson shortly thereafter. The police, in their investigation of the charged offenses, spent 40 to 60 hours searching for Anderson and Craven.

In contrast to the foregoing evidence, the testimony of Kovacevich, and, in particular, the tape recordings of the telephone conversations between petitioner and Kovacevich, were highly incriminating, undoubtedly comprising the strongest evidence against petitioner. Although, apart from this evidence, the prosecutor still would have been able to introduce the testimony of Torregano and a portion of Loar's testimony relating petitioner's admissions, that testimony—coming from jailhouse informants whose testimony was inherently suspect—would have been much less credible without the confirmation supplied by petitioner's own tape-recorded statements.

Indeed, the prosecutor, at trial, acknowledged and argued to the jury that the objectionable testimony and tape-recorded telephone conversations constituted the strongest evidence against petitioner. During closing argument,

the prosecutor displayed to the jury a chart delineating the various categories of the prosecution's evidence, and set apart the testimony of Loar and Kovacevich and the tape recordings, describing this evidence as the most important part of the prosecution's case.

For these reasons, in light of the significance of the evidence that would have been excluded had counsel provided constitutionally effective representation at trial, we conclude there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome of petitioner's trial, that the result would have been different but for counsel's deficient performance.

Having determined that petitioner has met his burden of establishing that counsel's deficient performance was prejudicial to the defense, we conclude that petitioner was deprived of the effective assistance of counsel guaranteed by the federal and state Constitutions. Accordingly, petitioner is entitled to the habeas corpus relief which he seeks.

## DISPOSITION

The petition for writ of habeas corpus is granted. The judgment is vacated in its entirety. Petitioner is remanded to the Superior Court of Los Angeles County. Upon finality, the clerk shall remit a certified copy of this opinion to the superior court for filing, and respondent shall serve another copy thereof on the prosecuting attorney in conformity with Penal Code section 1382, subdivision (a)(2). (See *In re Sixto* (1989) 48 Cal.3d 1247, 1265 [259 Cal.Rptr. 491, 774 P.2d 164].)

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.