Filed 7/22/13  P. v. Escalona CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046747 |
| v. | (Super. Ct. No. 10SF0012) |
| DANIEL ESCALONA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Daniel Escalona appeals his felony convictions arising out of his shooting Edgar Campos, contending his trial counsel was ineffective for failing to object to the admission of Campos's earlier statements to law enforcement. We reject the argument as the evidence was properly admitted and counsel has no obligation to raise meritless objections.

I

FACTS

The issue raised by defendant does not require a full recitation of the facts. The following suffices.

The district attorney filed an information in the Orange County Superior Court charging defendant, Andy Castellanos, Michael Torres, and Edgar Caudillo with the deliberate and premeditated attempted murder of Campos (Pen. Code,[1] §§ 187, subd. (a), 664, subd. (a); count one), assault with a firearm (§ 245, subd. (a)(2); count two), use of force against a witness (§ 140, subd. (a); count three) and active participation in a criminal street gang (§ 186.22, subd. (a)). The information further alleged defendant personally discharged a firearm, causing great bodily injury (§ 12022.53, subd. (d)), personally used a firearm (§ 12022.5, subd. (a)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)). It also alleged the remaining defendants vicariously discharged a firearm causing great bodily injury (§ 12022.53, subds. (d), (e)(1)) and were vicariously armed with a firearm (§ 12022, subd. (a)(1)). Additionally, as to each defendant, the information alleged counts one, two, and three were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).[2]

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Castellanos, Torres, and Caudillo are not parties to this appeal.

2

*Before the Shooting*

Deputy Sheriff Ashraf Abdelmuti testified as a gang expert. He is familiar with the Varrio Chico gang. He testified Varrio Chico had approximately 100 members at the time of the charged offenses and its primary activities include murder, assault with a deadly weapon, vehicle theft, and vandalism. The parties stipulated Varrio Chico members have committed the requisite predicate acts required by section 186.22. Each of the crimes were committed either by an active gang member or for the benefit of the "Varrio Chico criminal street gang." Abdelmuti concluded Jesus Canasales, Caudillo, Torres, and defendant are active participants in the Varrio Chico gang, and that Campos was an active participant in the gang until a few months prior his being shot.

On October 15, 2009, Investigator Patrick Rich responded to a gas station in San Juan Capistrano in connection with a loaded gun found in a vehicle. Rich questioned Edgar Campos, one of the individuals detained, about the firearm. Campos said he, his brother, and a female had been picked up by another female and an individual he identified as "Shadow." Campos identified a photograph of Canasales as Shadow. Campos said Canasales displayed a firearm during the drive to San Juan Capistrano and showed the weapon to everyone in the vehicle. Canasales ran from the scene, but was arrested later that day.

In November 2009, defendant and Debra Flores, the mother of Canasales's daughter, visited Canasales in jail at Canasales's request. Flores knew the reason Canasales had been arrested. During the visit, Canasales held up a police report to the glass partition in the visiting booth. Although areas of the police report were "blacked-out," Flores could read some of the names in the report. Flores said the police report showed that Campos was a "rat," a person who informed on another gang member to the police. According to Flores, a rat has to leave the gang and the neighborhood "or they get hurt."

3

In December 2009, Canasales pled guilty to felon in possession of a firearm and active participation in a criminal street gang, Varrio Chico. The guilty pleas were based on the October 15, 2009 incident.

*The Shooting*

On the evening of January 6, 2010, Flores returned home from work. Defendant and the codefendants were at her residence. The four defendants left Flores's residence about 6:00 p.m. Prior to leaving, they were "rowdy" and kept saying, "Let's go."

That same evening, Candy Lopez, a neighbor of Campos, saw Campos walking his dogs. Lopez left her patio and walked in the direction toward where she had seen Campos and his dogs. While she was still in front of her house, she saw some seven- or eight-year-old children who said there were people looking for Campos. Lopez went to find Campos to warn him, because she felt something bad was going to happen to him. She knew Campos was not on good terms with Varrio Chico because she had been told Campos gave police information about Canasales.

Lopez continued walking and saw Campos with his dogs. She saw defendant, Torres, and Castellanos assault Campos while a fourth person "was just standing there." Campos fought back. Once the fighting stopped, Lopez heard Torres say, "Just do it already." Lopez, said she did not remember what happened next, but admitted she told an investigator, defendant pulled a gun out of his pocket, "racked it," pointed the gun at Campos, and shot him one time. After the shot was fired, the defendant, Torres, Castellanos, and the fourth person ran away.

Campos was taken to the emergency room at the San Clemente Hospital. X-rays showed he had a bullet in his femur just above his knee. Campos was interviewed at the hospital and identified the defendants, stating he was positive defendant was the shooter.

4

Campos did not appear for trial despite having been subpoenaed. He was arrested and brought to the trial. He denied that he associated with Varrio Chico. He also claimed not to know Canasales and denied having been arrested with Canasales on October 15, 2009. After reading the police report of the incident to refresh his recollection, Campos said he remembered being detained and questioned about a gun. He denied remembering telling the sheriff deputy that Canasales possessed the loaded firearm. Campos also denied statements attributed to him while he was at the hospital. He further denied knowing any of the defendants and said he did not remember them being involved in his being shot. Without objection, the court permitted the prosecution to introduce the recording of Abdelmuti's questioning of Campos at the hospital into evidence, after finding Campos had been evasive in answering questions relating to statements he made to the deputy.

The jury found defendant guilty of attempted voluntary manslaughter (§§ 192, subd. (a), 664, subd. (a)) as a lesser included offense of attempted murder, and guilty on counts two through four. The jury found each of the sentencing allegations in connection with defendant true. The court sentenced defendant to 17 years in prison, consisting of a four-year aggravated term on count two, plus consecutive terms of three years on the great bodily injury enhancement and 10 years on the gang enhancement. The court stayed the sentence on the remaining counts.

II

DISCUSSION

Defendant contends his counsel was ineffective in failing to object to the introduction of Campos's recorded statement to the police. There is no merit to defendant's position.

A. *The Law Pertaining to Review of Ineffective Assistance of Counsel Claims*

A criminal defendant has a federal and state constitutional right to the

effective assistance of counsel. (U.S. Const., 6th & 14th Amends; Cal. Const., art. I, § 15.) There is no substantive difference between the federal and state constitutional right. (*People v. Doolin* (2009) 45 Cal.4th 390, 421.) "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. [Citation.] The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. [Citations.]" (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 374-375.) "To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner. [Citations.]" (*In re Wilson* (1992) 3 Cal.4th 945, 950, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

The failure to object to evidence is generally considered a tactical decision we do not second-guess. (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1335.) When the appellate record does not contain the reasons for counsel's action, we will reverse the conviction based on ineffective assistance of counsel "only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission. [Citations.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007-1008; see *People v. Torres* (1995) 33 Cal.App.4th 37, 48 [ineffective assistance of counsel claim considered when "there simply could be no satisfactory explanation for counsel not objecting to the proferred evidence"].)

B. *Trial Counsel was not Ineffective*

The court admitted Campos's recorded statement pursuant to Evidence

6

Code section 1235: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." Under section 770 of the Evidence Code, evidence of an inconsistent statement is admissible only if: "(a) The witness was so examined while testifying as to give him an opportunity to explain or deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action." The court implies the witness's statement is inconsistent with his testimony when the "'witness's claim of lack of memory amounts to deliberate evasion.'" (*People v. Ervin* (2000) 22 Cal.4th 48, 84, italics omitted.)

Campos, who did not appear for trial despite having been subpoenaed, testified only after he was arrested and brought to the trial. During the prosecutor's questioning, Campos was evasive about statements he made to Abdelmuti at the hospital. He repeatedly claimed not to remember statements attributed to him during that encounter or statements made during his detention in October 2009, in connection with the investigation of the loaded firearm found in a vehicle. For example, in addition to the evasions set forth above, after reading from the transcript of his questioning at the hospital, Campos denied remembering having made the statement that word was out on the street that he had been "green-lighted" because he had informed on Canasales.[3] Campos did admit that those who "rat" on gang members "get cracked."

After finding Campos was evasive in responding to questions about the interview at the hospital, the court permitted the prosecutor to play the recording of the interview. We defer to the trial court's determination on the question of whether Campos's purported lack of memory was a deliberate evasion (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 690, fn. 2), but even a cold reading of the record would lead to that conclusion. It was incontrovertibly evident Campos did not want to

---

[3] Abdelmuti, the gang expert, said a "green light" means an individual has been cleared to be assaulted or killed.

incriminate defendant, notwithstanding his prior statements to police. Indeed, one of the codefendant's counsel candidly admitted it was evident Campos was being willfully evasive. The court did not err in admitting Campos's prior statements to police pursuant to Evidence Code section 1235.

As the statement was properly admitted under Evidence Code section 1235 and defense counsel had an opportunity to cross-examine Campos afterward (Evid. Code, § 770), defense counsel was not ineffective in failing to object to the admission of the evidence. Defense counsel is not ineffective "for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

Lastly, the fact that Campos was clearly being evasive did not deny defendant his Sixth Amendment right to cross-examine. The mere fact that a witness gave evasive answers does not give rise to a violation of the defendant's Sixth Amendment right to effective assistance of counsel. (*United States v. Cronic* (1984) 466 U.S. 648, 660, fn. 26 ["generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors *of counsel* undermined the reliability of the of the finding of guilt"], italics added.)

IIII

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.