Filed 1/14/22  P. v. Cooper CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ROBERT COOPER,<br><br>     Defendant and Appellant. | 2d Crim. No. B304490<br>(Super. Ct. No. TA140718)<br>(Los Angeles County) |

A jury found Robert Cooper guilty of willful, deliberate, and premeditated murder.  (Pen. Code, § 187, subd. (a).)[1]  The jury found true firearm enhancements pursuant to section 12022.53, subdivisions (b), (c), (d), and (e).  The jury also found true that Cooper committed the murder for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(C).)  In a bifurcated proceeding, Cooper admitted that he suffered a prior strike within the

---

[1] All statutory references are to the Penal Code unless otherwise stated.

meaning of the "Three Strikes" law.  (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d).)

The trial court sentenced Cooper to 25 years to life for the murder, doubled to 50 years for the prior strike, plus a consecutive 25 years to life for the firearm enhancement pursuant to section 12022.53, subdivision (d), for a total of 75 years to life.  The trial court stayed the remaining enhancements. We affirm.

FACTS

*The Shooting*

In October 2012, Cooper was a member of the Leuders Park gang.  Nicos Mathis was a member of the Mob Piru gang.  At the time Leuders Park and Mob Piru were rivals.  Monique Peterson was a member of Mob Piru and a close friend of Mathis.  She also knew Cooper and his family well.

On the afternoon of October 24, 2012, Cooper, Mathis, and Peterson were in Gonzales Park in Compton.  Peterson left to buy food at Taco Bell, a short distance away.  Mathis remained at the park.  While Peterson was at Taco Bell, Mathis called her and told her he was "getting into it with people."  Peterson grabbed her food and immediately returned to the park.

When Peterson returned to the park, Cooper and Mathis were among a large group of men who were exchanging words. Mathis challenged Cooper to a fight.  Cooper declined the challenge.  Instead, Cooper walked toward a gym and took his cell phone out of his pocket.

About 20 minutes later, as Mathis and Peterson were preparing to leave the park, a gold Buick Regal drove into the park.  Peterson recognized the two occupants of the Buick as Leuders Park gang members.  Peterson knew the Leuders Park

gang members were capable of committing murder. She urged Mathis to leave immediately. But Mathis refused. He was waiting for a fellow gang member, "Hit Man," who, unknown to Mathis, had already left the park.

Eventually Mathis drove away with Peterson and two other friends in the car, still looking for Hit Man. Hit Man called and told Mathis where to meet him. Mathis pulled over on the street where Hit Man had arranged to meet. Peterson heard gunshots, and told Mathis to drive away, but they remained stopped.

Peterson turned and saw two cars, the Buick and a burgundy Infiniti. The Infiniti pulled up next to the driver's side of Mathis's car about three feet away with its windows rolled down. Peterson recognized Cooper, "Mousey," and "Honcho" in the Infiniti. Peterson saw two guns shooting at them from the front and back passenger side of the Infiniti. The Buick crashed into Mathis's car but drove away. Peterson checked on Mathis and saw he had been shot in the head and four times in the body. Peterson left the scene. She did not want to be labeled as a snitch. Mathis later died of his wounds in the hospital.

*Chase and Arrest*

Sheriff's Detective Steve Fernandez and Deputy John Werner heard the gunshots and drove in their direction. As they drove, the Buick and Infiniti came towards them at a high rate of speed. Fernandez saw two people in the Infiniti, the driver and a back passenger. Werner saw the driver and a front passenger. The sheriffs followed.

Fernandez activated the lights and siren and followed the Infiniti at high speeds through multiple residential streets and around numerous sharp turns. Werner saw someone throw a handgun out of one of the Infiniti's passenger windows.

3.

The chase ended when the driver, later identified as "Mouse," opened the door and rolled out of the car while it was still moving. The car continued driverless down the street until it hit a parked van and stopped. Werner left the patrol car and chased after the driver on foot before arresting him. A passenger, later identified as Lawrence Tate, got out of the Infiniti and was immediately detained by Fernandez.

Cooper, the other passenger, was followed by a sheriff in a helicopter. Cooper ran from the scene through a cemetery and a residential area and hid under a truck. Deputies were alerted by the helicopter pilot and arrested him.

Police later recovered the gun that was thrown from the Infiniti. Tests showed it was the gun that fired the bullets recovered from Mathis's body.

### Gunshot Residue (GSR) Evidence

At the sheriff's station where Cooper was taken, a deputy conducted a GSR test. Joseph Cavaleri, a chemist in the sheriff's crime laboratory, testified the test kit contained one particle that was "characteristic" of GSR; that is, all three elements comprising GSR were present.

Cavaleri testified that a person may test positive for GSR if they had handled or shot a gun, been in close proximity to someone who had shot a gun, or touched a surface that had GSR on it. Cavaleri responded to a hypothetical question based on facts taken from the evidence. He said running, sweating, climbing over fences, and crawling on the ground may remove GSR from a person's hand.

*Gang Evidence*

Detective Joseph Sumner testified as a gang expert. He is familiar with the gangs in Compton, including Leuders Park and Mob Piru.

Cooper is a respected member of Leuders Park. Tate, also known as "Honcho," is a senior member and a leader of the gang. Mouse was an active member who had died by the time of the trial.

The primary activities of the Leuders Park gang include theft, burglary, robbery, narcotic sales and possession, weapons sales and possession, assault, and murder.

Sumner has personal knowledge that a member of Leuders Park was convicted of robbery in 2012 and another member was convicted of the sale of narcotics in 2016.

Mathis and Peterson were members of the Mob Piru gang. Peterson is no longer in good standing because she testified in this case.

Sumner testified that gangs have plans and tactics they employ in drive-by shootings. They are selective about which members they allow to go along on the shootings. Those who are considered weak are excluded.

In response to a hypothetical question based on the evidence, Sumner opined that the shooting was for the benefit of a criminal street gang.

The defense rested without introducing evidence or calling witnesses.

## DISCUSSION

## I

*Exclusion of Officer-Involved Shooting Evidence*

Cooper contends the trial court erred in excluding evidence that the police shot Mouse and Tate as they fled from the Infiniti.

At trial Cooper argued that the evidence was relevant because the jurors would be instructed that they may consider his flight from the scene as evidence of his consciousness of guilt. He claimed that the police shooting gave him an explanation for his flight that did not point to his guilt.

*Evidence Code Section 402 Hearing*

The trial court held a hearing pursuant to Evidence Code section 402 on the relevancy of the evidence.

Detective Fernandez testified that Tate, the front passenger, got out of the car and ran in Fernandez's direction. Tate was clutching at this waistband under his coat. Fernandez shot Tate because he feared for his life. The shooting occurred three to five seconds after Tate got out of the car.

Deputy Werner testified that he chased the driver about 10 to 15 seconds before shooting him. Werner said the driver kept bending over, searching for his waistband, and turning to look at him. Werner shot him because he believed he was reaching for a firearm.

The trial court ruled that the evidence of the police shootings was irrelevant. In explaining its ruling, the court mistakenly believed that Cooper was the driver, instead of the rear passenger. The court stated that Cooper was in flight before the shooting started.

The trial court instructed the jury with CALCRIM No. 372, as follows: "If the defendant fled or tried to flee immediately

6.

after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

*Analysis*

The trial court has broad discretion in ruling on the admissibility of evidence.  (*People v. Dean* (2009) 174 Cal.App.4th 186, 193.)

Cooper argues the trial court could not have properly determined that the evidence was irrelevant because it misunderstood the facts.  It mistakenly believed that Cooper was the driver.  Cooper further argues that he was denied effective assistance of counsel when his counsel failed to point out the mistake.

The trial court may have been mistaken about who was driving, but it was correct in its conclusion that Cooper was in flight before the police shooting started.  This was a drive-by shooting.  Cooper's flight began immediately after he and his compatriots shot Mathis.  The whole idea of a drive-by shooting is to make a quick getaway.  It is certain Cooper and his compatriots did not plan to shoot Mathis and remain on the scene until the police arrived.  Cooper's flight after he left the car was nothing more than a continuation of his flight from the scene of the crime.

The trial court did not abuse its discretion in excluding evidence of the police shooting.  Cooper was in flight before the shooting started.

*Harmless Error*

Even had the trial court erred by excluding the evidence, the error would have been harmless by any standard.

The only relevance suggested by Cooper for the evidence was to refute the implication of consciousness of guilt arising from his flight. But evidence of consciousness of guilt arising from Cooper's flight from the police after his car crashed was the least of Cooper's problems at trial.

The evidence at trial unequivocally showed that Cooper was an active participant in a gang shooting. It started when Mathis showed disrespect to Cooper and his gang by challenging him to a fight. To avenge the insult, Cooper gathered members of his gang, hunted Mathis down, and executed him. A gun thrown from the car in which Cooper was riding was used to shoot Mathis. There was not even a hint of evidence to suggest the shooting was accidental or in self-defense. It was cold-blooded murder, pure and simple. Cooper would not have been helped by evidence that the police shot his coconspirators after the murder.

Because ineffective assistance of counsel requires prejudice, it follows that Cooper did not receive ineffective assistance. (*In re Wilson* (1992) 3 Cal.4th 945, 950.)

II

*Exclusion of Testimony of GSR Expert*

Cooper contends the trial court erred in sustaining the prosecutor's objections to his questions of the GSR expert, Cavaleri.

Cooper's counsel asked Cavaleri about a study showing GSR is often found in police stations. The trial court sustained the prosecution's objection, finding the question irrelevant because there was no evidence of GSR at the sheriff's station to

which Cooper was taken. The court also cited Evidence Code section 352.

Cooper argues the evidence is relevant to show that GSR can be transferred between surfaces. Thus, the particle of GSR found on Cooper's hand may have come from a source other than shooting a gun.

But Cooper's counsel made that point with other questions. He elicited from Cavaleri that GSR can be transferred from other surfaces; that sometimes police cars have GSR in them; that the best place to perform a GSR test is at the crime scene, not later at the police station; and that the presence of GSR does not necessarily prove that the person fired a firearm. Any reasonable juror would have seen the point Cooper was trying to make: that he could have picked up a particle of GSR from any number of sources. If the trial court erred, it was harmless by any standard.

Moreover, the prosecution was not required to prove that Cooper personally discharged a firearm. The prosecution only had to prove that Cooper was an accomplice in a murder for the benefit of a criminal street gang in which its principal personally and intentionally discharged a firearm causing death. (§ 12022.53, subds. (d) & (e); *People v. Hernandez* (2005) 134 Cal.App.4th 474, 480.) That is what the jury found. The jury was not required to find that Cooper was the actual shooter.

Here the evidence showed that Cooper acted with members of his gang to avenge disrespect shown to them by a rival gang member. If Cooper was not the actual shooter, he was at least an accomplice. It was unfortunately a typical murder carried out for the benefit of a criminal street gang.

### III
### *Sentencing Discretion*

Cooper contends the trial court did not understand the scope of its sentencing discretion on the firearm enhancements.

The jury found true the firearm enhancements under section 12022.53, subdivisions (b), (c), and (d). Originally the trial court sentenced Cooper to a consecutive 10 years under subdivision (b). But the court changed that to a consecutive 25 years to life under subdivision (d). The court stayed sentence under subdivisions (b) and (c) pursuant to section 654.

Cooper argues the trial court did not know it had the discretion to strike the enhancement under section 12022.53, subdivision (d) in the interest of justice and impose one of the lesser enhancements under subdivision (b) or (c). (Citing *People v. Morrison* (2019) 34 Cal.App.5th 217, 222.)

But Cooper requested that the trial court strike a prior strike for robbery and the firearm enhancement in the interest of justice. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) The trial court refused, noting that Cooper had two prior robbery convictions and a series of misdemeanor convictions.

In denying the request, the trial court said:

"[W]eighing of the pros and cons and looking at this particular prior from every direction: north, south, east, west, up, down and sideways, there just is no basis for the court to grant the *Romero* motion. And if the court could, the court would. Because Mr. Cooper has been an ideal, model person in front of his court. No problems whatsoever.

"But I am a judge of the law, so I have to follow the law. And the law basically doesn't even give me any leeway to give him – even remotely consider striking the prior based upon

*Romero.* So unfortunately, and regretfully, the court's going to deny the motion to strike the prior."

The trial court did not expressly address its refusal to strike the firearm enhancement. But the reasonable conclusion is that its refusal was based on the same facts that led the court to deny Cooper's *Romero* motion: Cooper's history of criminal offenses. The court's comments show it recognized it had discretion. The court's statement that "the law basically doesn't even give [it] any leeway" was simply made in recognition that its discretion is not unbridled.

Cooper points to nothing in the record to show the trial court did not understand it had the discretion to strike the enhancement under section 12022.53, subdivision (d) and impose one of the lesser enhancements.

Section 12022.53, subdivision (h) provides, in part: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

Here the jury found true three separate enhancements under section 12022.53, subdivisions (b), (c), and (d). It would have been obvious to the trial court that it had the discretion under section 12022.53, subdivision (h) to strike one or more of those enhancements and impose sentence on any remaining enhancements.

We presume the trial court understood and acted within the scope of its discretion (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [a judgment or order of the trial court is presumed correct on all matters on which the record is silent, and appellant must affirmatively show error].) Cooper points to nothing in the record to indicate otherwise.

Cooper argues he was denied effective assistance of counsel when his counsel failed to expressly inform the court it had the discretion to impose a lesser firearm enhancement.

First, the argument assumes the trial court did not understand the scope of its discretion. Nothing in the record shows it did not understand.

Second, the record indicates that the trial court would not have exercised its discretion to impose a lesser enhancement had Cooper's counsel expressly requested it. The court found that Cooper was not entitled to leniency. In fact, the court initially imposed a lesser 10-year firearm enhancement under section 12022.53, subdivision (b). The court changed it to 25 years to life under section 12022.53, subdivision (d).

IV

*Amendments to Section 186.22*

While this appeal was pending, the Legislature amended section 186.22. (Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022.) We requested supplemental briefs on the applicability of the amendments. Because Cooper's case was not final, the People concede the changes to section 186.22 apply. (Citing *In re Estrada* (1965) 63 Cal.2d 740.)

Section 186.22, subdivision (e) provided prior to the amendment: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons: . . ."

The amended section 186.22, subdivision (e)(1) provides: "As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter, and the last of those offenses occurred within three years of the prior offense and *within three years of the date the current offense is alleged to have been committed*, the offenses were committed on separate occasions or *by two or more members*, *the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational*: . . ." (Italics added.)

The amended section 186.22, subdivision (e)(1) requires additional evidence in order to establish a "pattern of criminal gang activity": (1) that the last predicate offense occurred within three years of the date the current offense was alleged to have occurred; (2) that the predicate offenses are committed by two or more gang members; and (3) that the predicate offenses commonly benefited a criminal street gang and that the benefit was more than reputational. In addition, section 186.22, subdivision (e)(2) provides that the currently charged offense cannot be used to establish a pattern of criminal gang activity.

Cooper argues the matter must be remanded for retrial under amended section 186.22 because the jury was not instructed that the predicate offenses must commonly benefit the gang and the benefit must be more than reputational.

The prosecution introduced evidence of convictions for robbery in 2012 and sale of narcotics in 2016. Detective Sumner testified that the offenses were committed by Leuders Park gang

13.

members and that robbery and sale of narcotics are some of the gang's primary activities.  The evidence was uncontradicted.  The benefit to the gang of robbery and sale of narcotics is more than reputational.  The evidence of gang involvement in the instant case is beyond dispute.

There is no reasonable doubt that the jury would have found the gang enhancement true had it been instructed with the amendments to section 186.22.  Reversal is not required. (*Chapman v. California* (1967) 386 U.S. 18.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

14.

Allen Joseph Webster, Jr., Judge

Superior Court County of Los Angeles

_____

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.