Filed 4/4/14  P. v. Steele CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD BERT STEELE,<br><br>    Defendant and Appellant. | A135374<br><br>(Del Norte County<br>Super. Ct. No. CRF11-9728) |

Edward Bert Steele appeals from convictions of unlawfully taking or driving a vehicle and receiving stolen property.  He contends the trial court erred in failing to stay the sentence on the receiving stolen property count because the conviction was based on the same conduct as the unlawful driving conviction; that he is entitled to additional custody and conduct credits; that the trial court erred in requiring him to reimburse the county for the presentence investigation report because there was insufficient evidence of his ability to pay; and that the abstract of judgment and minutes must be corrected to indicate he was convicted of unlawful driving rather than unlawful taking or theft.[1]  We will direct that the judgment be modified to stay sentence on the count of receiving stolen property, to add the additional credits to which appellant is entitled, and that the judgment

---

[1]Appellant initially raised an additional issue on appeal, arguing that he received ineffective assistance of counsel in that his attorney failed to advocate for a sentence less than the aggravated term recommended by the probation department.  He withdrew this argument in his reply brief because of his February 22, 2013, release from custody.

1

and court minutes be corrected with regard to the nature of appellant's unlawful driving conviction. As so modified, we will affirm the judgment.

## STATEMENT OF THE CASE

Appellant was charged by information filed on March 6, 2012, with one count of unlawful driving and taking of a vehicle (Veh. Code, § 10851) and one count of receiving stolen property (Pen. Code, § 496, subd. (a).) After a trial on April 2, the jury found appellant guilty as charged.

On May 3, appellant was sentenced to a jail term of three years, consisting of the aggravated term of three years for the Vehicle Code section 10851 conviction and a concurrent three year term for the Penal Code section 496 conviction. The court reserved jurisdiction to consider a split sentence after appellant had served one year. Appellant was awarded 73 days of actual credit for time served and 72 days of conduct credit, for a total of 145 days of presentence custody credit.

Appellant filed a timely notice of appeal on May 4, 2012.

On February 22, 2013, appellant was released on mandatory supervision (Pen. Code, § 1170, subd. (h)(5)(B)).

## STATEMENT OF FACTS

On October 15, 2011, David Fugate was cleaning his residence in Crescent City. Appellant, who was a cousin of Fugate's fiancé Elizabeth Gensaw, had been helping Fugate with the house over the last few days. Appellant and his girlfriend used a spare bedroom if they wanted to stay over.

Appellant asked to borrow Fugate's red 2005 Chrysler Crossfire to do laundry. Fugate told him he could borrow the car for two hours. Appellant returned the car a little late, which upset Fugate, and parked it in the driveway. Fugate asked for the keys and appellant said they were hanging in the closet of the room appellant was using. Appellant asked where Fugate's set of keys was, which Fugate took as implying appellant believed the keys he had used would be his while he was at the house. Fugate told appellant the keys were not his to use, took them from the closet, put them on a makeshift dresser in

2

his bedroom, and then lay down to rest. He did not give appellant permission to use the car again.

When Fugate woke up, he noticed that his car was not in the driveway. He asked his fiancé and appellant's girlfriend where the car was and someone mentioned that appellant had it. Fugate's cell phone was also missing; appellant had borrowed the phone before Fugate lay down but had not returned it. Fugate wanted to call the police immediately, but Gensaw talked him out of it, saying it would be appellant's third strike and if the police chased him, he would wreck the car. Fugate repeatedly called and texted his phone but received no answer.

Over the next several days, Fugate called and texted his phone 15 or 20 times a day. He had friends drive him around, attempting to find appellant. On one occasion, appellant answered the phone, then hung up when Fugate shouted at him to return the car. Fugate tried to report the car stolen with the California Highway Patrol (CHP) but they viewed it as a family matter and initially would not write a theft report, then did so when Fugate returned and insisted.

On October 25, 2011, CHP Officer Mike Berry received a call to be on the lookout for a possible embezzled red Crysler Crossfire on U.S. 101 northbound, in the vicinity of Mad River, Giuntoli, in the Arcata area. Berry, driving southbound on U.S. 101, saw a vehicle matching the description and turned around to initiate contact. The car accelerated rapidly and, as Berry tried to overtake it, turned into oncoming traffic at the " 'S' " turns near Big Lagoon Causeway, got back on the northbound side and continued at approximately 130 miles per hour until the road narrowed to two lanes and Berry lost sight of it.

Berry advised dispatch that he had spotted the vehicle but was not pursuing it because of the danger to the public. He continued driving north as several people pointed out their windows, indicating the vehicle was travelling north. A motorist indicated the vehicle had driven up Kane Road. Berry and another unit that had responded to his call went to a point where the road came to a T, and waited there for an additional unit. Berry

3

saw the Crossfire driving slowly toward them. The driver, whom Berry did not recognize at this point, stopped. Berry and Officer Page conducted a high risk stop with their weapons drawn, ordering the people in the car to show their hands. The passenger complied but the driver did not, despite repeated orders from the officers. The vehicle backed up and over the embankment, becoming partially stuck. As the officers approached, the driver exited the vehicle, ran behind it and fled into the bushes heading back toward the highway.

The officers detained the passenger, identified as Marcus Shirley, until it was determined that he was not a party to any crime. Dispatch contacted Fugate and reported he was on his way from Crescent City. The officers inventoried the vehicle, finding appellant's wallet, containing his identification papers, in the driver's door pocket, some letters addressed to appellant, some clothing and several cell phones. They determined that the license plates on the vehicle did not belong to it. After about 90 minutes, it was determined that Fugate would not be able to get there to retrieve the vehicle and Berry had it towed for storage.

As Berry resumed his patrol northbound on U.S. 101, he noticed appellant, whom he knew from previous contacts, on the shoulder north of Kane Road, waving down traffic. The officer pulled over and appellant started to walk away, then stopped in response to Berry's order. Berry noticed that appellant had a lot of scratches from the brush and asked if he was okay; appellant said he was. As Berry handcuffed him, appellant apologized for running, said "that was stupid" and said "he was screwed on the deal of the car."

Berry testified that based on his training and experience false license plates are usually attached to cars to hide something, such as the true identity of the vehicle or registration issues.

Fugate testified that when his car was found, it was not in the same condition as when it was taken: The rims and tires were marred, the paint was dirty, the interior was "trashed" and the license plates had been changed. Also, the CDs, phone charger and

4

GPS system disk that had been in the car were gone and a war insignia had been removed from the back window.

## DISCUSSION

## I.

Appellant contends the sentence on his conviction for receiving stolen property should have been stayed under Penal Code section 654 because it was based upon the same conduct as his conviction for unlawful driving.

Penal Code section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208, quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

Penal Code section 496, subdivision (a), defines the crime of receiving stolen property and "provides that a person who has been convicted of the theft of property may not also be convicted of receiving the same property. This provision codifies a common law rule prohibiting separate convictions of the same person for stealing and receiving the same property. (*People v. Allen* (1999) 21 Cal.4th 846, 857 (*Allen*).)" (*People v. Garza* (2005) 35 Cal.4th 866, 871.)

Vehicle Code section 10851, subdivision (a) provides that "[a]ny person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense. . . ." "A person can violate section 10851(a) 'either by taking a vehicle with the intent to steal it or by driving it with the intent only to

5

temporarily deprive its owner of possession (i.e., joyriding).' [Citations.]" (*People v. Garza, supra,* 35 Cal.4th at p. 876.)

"Unlawfully taking a vehicle with the intent to permanently deprive the owner of possession is a form of theft, and the taking may be accomplished by driving the vehicle away. For this reason, a defendant convicted under section 10851(a) of unlawfully taking a vehicle with the intent to permanently deprive the owner of possession has suffered a theft conviction and may not also be convicted under section 496(a) of receiving the same vehicle as stolen property. On the other hand, unlawful driving of a vehicle is not a form of theft when the driving occurs or continues after the theft is complete (for convenience, we will refer to this as posttheft driving). Therefore, a conviction under section 10851(a) for posttheft driving is not a theft conviction and does not preclude a conviction under section 496(a) for receiving the same vehicle as stolen property." (*People v. Garza, supra,* 35 Cal.4th at p. 871.) When the evidence is such "that it is not reasonably probable that a properly instructed jury would have found that the defendant took the vehicle but did not engage in any posttheft driving, a reviewing court may construe the Vehicle Code section 10851(a) conviction as a conviction for posttheft driving and on this basis may uphold the conviction under Penal Code section 496(a) for receiving the same vehicle as stolen property." (*People v. Garza, supra,* 35 Cal.4th at p. 872.)

Appellant does not challenge his *convictions* of both offenses, recognizing that his posttheft driving of Fugate's car precludes an argument that his Penal Code section 10851, subdivision (a), conviction bars a separate conviction for violation of Penal Code section 496, subdivision (a). His argument that he could not properly be *sentenced* on both convictions, as we have said, depends on the intent and objective with which he committed each offense. (*People v. Latimer, supra,* 5 Cal.4th at p. 1208.) Appellant argues that both convictions arose from his unlawfully driving Fugate's vehicle over a period of 10 days, evidencing only a single intent and objective.

Several cases support appellant's general position. In *People v. Jamarillo* (1976) 16 Cal.3d 752, 754–755, the defendant was convicted under both Vehicle Code section

6

10851, subdivision (a), and Penal Code section 496, subdivision (a), after being found in a car that had been stolen in another city some 12 days earlier. Reversing the convictions because the evidence was such that the unlawful driving conviction might have been based on theft of the vehicle, the Supreme Court observed that if the prosecutor elected to retry the case, "[w]hile conviction on both charges would be proper should particular findings be made we note without discussion that generally both charges arise from a single course of conduct and punishment on both counts would be improper. (Pen. Code, § 654; *People v. Quinn* (1964) 61 Cal.2d 551, 555–556.)" (*People v. Jaramillo, supra,* 16 Cal.3d at p. 760, fn. 9.) *People v. Austell* (1990) 223 Cal.App.3d 1249, which upheld dual convictions because the unlawful driving conviction was not based on theft of the vehicle, noted that the defendant's "interests against multiple punishment were adequately protected by the trial court's stay of execution of sentence on count I, pursuant to Penal Code section 654." (*Id.* at p. 1252 and fn. 3.) In *People v. Garza, supra,* 35 Cal.4th at page 874, the trial court had stayed the sentence imposed on the Penal Code section 496, subdivision (a) conviction pursuant to Penal Code section 654, so no issue of multiple punishment was involved in the appeal.

Respondent urges that the evidence in the present case shows that appellant acted with separate intents and objectives—that on the first night, when he took the car from Fugate's house without permission, his objective was to "take or drive the car away" from the house, whereas a "separate transaction" occurred later, when Fugate reached appellant by phone, told him to return the car and appellant hung up. After this point, respondent argues, the evidence shows that appellant intended to conceal the car from Fugate by changing the license plates, trashing the car and driving it 70 miles away. In arguing multiple punishment is proper in the present case, respondent attempts to distinguish *Garza* on the basis that the stolen vehicle in that case was found only two or three blocks from where it had been taken, the defendant did not admit driving the vehicle, and the appearance of the vehicle had not been changed.

7

We fail to see how these distinctions are meaningful on the question of the defendant's intent. As in the present case, the evidence in *Garza* supported a conclusion that the defendant stole the vehicle as well as subsequently unlawfully driving it, and the vehicle was missing for a number of days before being found in the defendant's possession. The fact that the defendant did not admit driving the vehicle—when found, he was apparently under the influence of controlled substances and failed to respond to the officer's questions—does not appear to shed any light on the question of intent. Nor do the facts that the car in the present case was found further from the location from which it was taken or that the license plates were changed point to multiple intents in unlawfully driving the car. By taking Fugate's car and continuing to drive it, appellant demonstrated his intent to take the car and drive it without Fugate's permission. Appellant's refusal to talk to Fugate on the phone and the changed license plates further demonstrate this intent. There is no evidence to support respondent's theory that appellant formed a new intent to conceal the property from Fugate after the incident in which he answered the phone and then hung up on Fugate. Appellant had already been in possession of the car for several days at this point, and there is no evidence of when any change to the vehicle was made. To the extent respondent is drawing a distinction between the initial taking of the vehicle and the subsequent driving of it, the distinction would preclude appellant being convicted of both unlawful driving and receiving stolen property. Given that the Vehicle Code section 10851, subdivision (a), conviction was based on appellant's posttheft driving—the only basis upon which both convictions can be affirmed, and which appellant concedes—the evidence simply shows that appellant intended to continue driving Fugate's car without Fugate's permission over an extended period of time.

The trial court erred in failing to stay the sentence on appellant's conviction for receiving stolen property. Imposition of concurrent sentences "is not correct if section 654 prohibits multiple punishment. 'It has long been established that the imposition of concurrent sentences is precluded by section 654 [citations] because the defendant is

8

deemed to be subjected to the term of both sentences although they are served simultaneously.' (*People v. Miller* (1977) 18 Cal.3d 873, 887.)  Instead, the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' (*Id*. at p. 886; see *People v. Sloan* (2007) 42 Cal.4th 110, 116.) . . . [T]he law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment." (*People v. Jones* (2012) 54 Cal.4th 350, 353.)

## II.

Appellant contends he is entitled to additional credit for time served because the trial court's award was based on erroneous information. The trial court awarded appellant 73 days of actual custody credits and 72 days of conduct credits, for a total of 145 days credit.  This award was based on the presentence report's statement that appellant was arrested on February 21, 2012.   The court's minutes for February 17, 2012, however, indicate appellant was in custody as of that date.  Appellant suggests that a handwritten note on the arrest warrant—"2-16-12 @ 1753 hrs"—indicates he was arrested on February 16.  The "Return of Peace Officer" section of the arrest warrant, however, is not filled in.

Respondent agrees that appellant is entitled to additional credits without taking a position on the precise number of credits that should be awarded.   At the February 21, 2013, hearing on appellant's release on mandatory supervision, the trial court noted appellant's contention on this appeal that his credits were not calculated properly.  The trial court stated that it was clear appellant was entitled to credits from February 16, 2012, not February 21, but that it was unclear whether it could make the correction at that point or had to wait for the appellate court's resolution of the issue.   The court did not further address the issue.

The trial court having determined that appellant was entitled to five days of actual presentence custody credit, it follows that appellant was entitled to a total of 78 days of presentence custody credit plus 78 days of conduct credit, for a total of 156 credits

9

against his sentence. (Pen. Code, §§ 2900.5, subd. (a), 4019, subds. (a)(4), (b), (c), (f).) The judgment shall be so modified.

## III.

Appellant next contends the trial court erred in requiring him to reimburse the county for the presentence investigation report because there is insufficient evidence of his ability to pay. Appellant told the probation officer that he was currently unemployed, that he had trained cage fighters in Oregon for seven years and that he had worked as a firefighter in Oregon for four years. Appellant supplied no information on his income and expense declaration, although he signed the form; the probation officer listed as an aggravating circumstance that appellant had failed to complete the financial declaration and the court expressly noted this as one of the circumstances upon which it based its decision to impose an aggravated sentence (Pen. Code, § 1202.4, subd. (f)(9)(A)).[2] The court imposed the fines recommended in the probation report without discussion or findings on appellant's ability to pay. In the court's minutes, the box for "No ability to reimburse for Probation Officer's report" was not checked. The court did find, however, that appellant had no ability to reimburse the county for the public defender fees, and the minute order so reflects.

Penal Code section 1203.1b, subdivision (a), provides in pertinent part: "In any case in which a defendant is convicted of an offense and is the subject of any . . . presentence investigation and report, . . . the probation officer, or his or her authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of . . . conducting any presentence investigation and preparing any presentence report made pursuant to Section 1203 . . .

---

[2] The probation report states that when interviewed, appellant was polite and respectful but unwilling to answer all questions, and that he said he did not fully fill out the personal history packet because he did not want to "expose his personal life."

10

The court shall order the defendant to appear before the probation officer, or his or her authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs. The probation officer, or his or her authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay. The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount. The defendant must waive the right to a determination by the court of his or her ability to pay and the payment amount by a knowing and intelligent waiver."

An order requiring the defendant to reimburse the costs of investigating and preparing the presentence report must be supported by substantial evidence of the defendant's ability to pay. (*People v. Phillips* (1994) 25 Cal.App.4th 62, 71; *People v. Adams* (1990) 224 Cal.App.3d 705, 713.) In *Adams,* an order requiring the defendant to reimburse the costs of probation and the presentence report was reversed because the trial court failed to hold a hearing on the defendant's ability to pay and no evidence supported finding such ability. (*People v. Adams, supra,* 224 Cal.App.3d at p. 713.) Although the defendant was working at the time of trial, he was ordered to serve one year in jail before beginning three years of supervised probation. This order meant he would lose his current job, and there was no evidence he would otherwise have the ability to pay during that one year period. (*Ibid.*) Appellant argues there was no evidence of ability to pay here because he was unemployed and sentenced to a three-year jail term. Under Penal Code section 1203.1b, while the court is to consider not only the defendant's present financial condition but also his or her "[r]easonably discernable future financial position," in making the latter determination, the court is prohibited from considering a period of more than one year from the date of the hearing. (Pen. Code, § 1203.1b, subd. (e)(2).)

The record before us does not indicate that the probation department or the court made any determination of appellant's ability to pay the cost of the presentence report, or

11

that he was informed of his right to a court hearing on his ability to pay or knowingly and intelligently waived such a hearing.  (See, *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1067–1068.)  But appellant did not object to imposition of the fee, and by this failure forfeited the issue.  (*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1068.)

Appellant attempts to avoid this conclusion by arguing that his challenge is based not on the failure to follow the statutory procedures for imposing the fee, as in *Valtakis,* but on the insufficiency of the evidence to support the order.  He relies primarily upon *People v. Butler* (2003) 31 Cal.4th 1119 to argue that failure to object in the trial court does not forfeit a claim that an order is unauthorized due to insufficient evidence to support a prerequisite to lawful imposition of the order.  *Butler* involved an order to submit to involuntary HIV testing pursuant to Penal Code section 1202.1, which conditions the order on a finding of probable cause to believe that bodily fluid capable of transmitting HIV was transferred from the defendant to the victim.  (*Id.* at p. 1126.) *Butler* explained that a claim that a judgment is not supported by substantial evidence is an exception to the general rule that a point not urged in the trial court cannot be raised on appeal.  (*Ibid.*)  Probable cause is an objective legal standard, requiring a reviewing court to defer to the trial court's determination of underlying facts supported by the evidence, but to exercise independent judgment in applying the legal standard.  (*Id.* at p. 1127.)  Whether the trial court makes an express finding of probable cause or the reviewing court presumes an implied finding of probable cause, "because the terms of the statute condition imposition on the existence of probable cause, the appellate court can sustain the order only if it finds evidentiary support . . . ."  (*Ibid.*)  *Butler* further noted that its conclusion was "controlled not only by the specific terms of [Penal Code] section 1202.1 but also by the general mandate that involuntary HIV testing is strictly limited by statute."  (*Butler, supra,* 31 Cal.4th at p. 1128, fn. 5.)

Our Supreme Court's decision in *People v. McCullough* (2013) 56 Cal.4th 589 makes clear that appellant's reliance upon *Butler* is unavailing.  *McCullough* held that failure to object in the trial court to imposition of a booking fee precludes an appellate

12

claim that the evidence is insufficient to support the required finding of ability to pay the fee. (*Id.* at p. 597.) *McCullough* rejected the defendant's attempt to liken the issue to that in *Butler* by viewing a trial court's finding of sufficient evidence to impose a booking fee as "finding 'facts in light of an objective legal standard' " that should be reviewed as a matter of law. (*Id.* at p. 596.) The Court explained: "We conclude that defendant's ability to pay the booking fee here does not present a question of law in the same manner as does a finding of probable cause. Defendant may not 'transform . . . a factual claim into a legal one by asserting the record's deficiency as a legal error.' (*People v. Forshay* (1995) 39 Cal.App.4th 686, 689–690.) By 'failing to object on the basis of his [ability] to pay,' defendant forfeits both his claim of factual error and the dependent claim challenging 'the adequacy of the record on that point.' (*Id.* at p. 690; see *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517 [analyzing Health & Saf. Code, § 11372.7, subd. (b), and concluding challenge to the court's order forfeited largely because 'factual issues come into play in determining whether a defendant has the ability to pay' the otherwise mandatory drug program fee].) In [*People v.*] *Welch* [(1993) 5 Cal.4th 228], the defendant argued that Penal Code section 1203.1 conditioned the court's order on its 'reasonableness,' and that therefore the claim that an order was unreasonable represented legal error that could not be forfeited because it went to the court's authority to act rather than its discretion to act. We disagreed. Instead, we found the defendant's assertion of error encompassed factual matters only, namely, whether 'the court exercised its otherwise lawful authority in an erroneous manner under the particular facts.' (*Welch, supra*, 5 Cal.4th at p. 236; see [*People v.*] *Scott* [(1994)] 9 Cal.4th [331,] 354–355.) Similarly, we hold here that because a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*People v. McCullough, supra,* 56 Cal.4th at p. 597.)

*McCullough* makes clear that *Butler*'s departure from the forfeiture doctrine is a limited one.[3]  In the present case, as in *McCullough*, the ability to pay condition presented a factual question that was forfeited by appellant's failure to object.  (See *Butler, supra,* 31 Cal.4th at pp. 1130–1131, conc. opn. of Baxter, J. ["[D]espite our ruling today, it remains the case that other sentencing determinations may not be challenged for the first time on appeal, even if the defendant claims that the resulting sentence is unsupported by the evidence. This includes claims that the record fails to demonstrate the defendant's ability to pay a fine. [Citations.] [¶] . . . [W]e generally will not extend the rules governing challenges to the factual sufficiency of criminal convictions or civil judgments to challenges to the factual sufficiency of orders made at sentencing."].)  *McCullough* expressly disapproved the other case that appellant relies upon, *People v. Pacheco* (2010) 187 Cal.App.4th 1392, to the extent its holding was contrary to *McCullough*'s conclusion that there was no reason "the rule permitting challenges made to the sufficiency of the evidence to support a judgment for the first time on appeal 'should apply to a finding of'

---

[3]Indeed, *Butler* itself made this clear, stating that "nothing in our analysis should be construed to undermine the forfeiture rule of *People v. Scott, supra*, 9 Cal.4th 331, that absent timely objection sentencing determinations are not reviewable on appeal, subject to the narrow exception articulated in *People v. Smith* (2001) 24 Cal.4th 849.)"  (*Butler, supra,* 31 Cal.4th at p. 1128, fn. 5.)  *Smith* referred to "a narrow exception to the waiver rule for ' "unauthorized sentences" or sentences entered in "excess of jurisdiction." ' (*Welch, supra*, 5 Cal. 4th at p. 235.)  Because these sentences 'could not lawfully be imposed under any circumstance in the particular case' (*Scott, supra*, 9 Cal.4th at p. 354), they are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.'  (*Welch, supra*, 5 Cal. 4th at p. 235.)  We deemed appellate intervention appropriate in these cases because the errors presented 'pure questions of law' (*ibid*.), and were ' "clear and correctable" independent of any factual issues presented by the record at sentencing.' (*Scott, supra*, 9 Cal. 4th at p. 354.) In other words, obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable." (*People v. Smith, supra,* 24 Cal.4th at p. 852.)

ability to pay a booking fee under Government Code section 29550.2." (*McCullough, supra,* 56 Cal.4th at p. 599, quoting *People v. Butler, supra,* 31 Cal.4th at p. 1126.)[4]

Recognizing the possibility he might be held to have forfeited the issue, appellant argues he received ineffective assistance of counsel due to his attorney's failure to object to the probation report order. Under the familiar principles, "[e]stablishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694; *In re Wilson* (1992) 3 Cal.4th 945, 950.) A 'reasonable probability' is one that is enough to undermine confidence in the outcome. (*Strickland v. Washington, supra,* 466 U.S. at p. 694; *In re Jones* (1996) 13 Cal.4th 552, 561.)" (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541.) " ' "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission." ' (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)" (*People v. Lucas* (1995) 12 Cal.4th 415, 436–437.)

Appellant argues this is the case here, as there could be no rational tactical reason for his attorney to fail to object to an unauthorized sentence. As we have seen, *McCullough* refutes appellant's characterization of the sentence here as unauthorized. Nevertheless, if appellant in fact lacked the ability to pay the probation report fee, it would be difficult to imagine a tactical reason for failing to object to imposition of the fee. Appellant, however, made it impossible to assess his ability to pay by refusing to

---

[4]*Pacheco* held that challenges to the imposition of various fees, including a probation fee under Penal Code section 1203.1b, subdivision (a), based on insufficient evidence of ability to pay were not forfeited by failure to object in the trial court. (187 Cal.App.4th at pp. 1395–1396.)

provide any information on his income and expense declaration. If appellant had any assets or savings, for example, the fact that he was currently unemployed would not necessarily preclude a finding of ability to pay. Because of appellant's refusal to cooperate in providing the necessary financial information, it is at least possible that his attorney failed to object to imposition of this fee because the attorney knew the court would find him able to pay it. This reasoning is not altered by the fact that the court did find appellant lacked the ability to reimburse the county for public defender fees, as such fees would clearly impose a much more significant financial burden than the $400 fee for the presentence report. Appellant has not met his burden of establishing ineffective assistance of counsel.[5]

## IV.

Finally, appellant seeks to have the abstract of judgment and court minutes corrected to reflect that he was convicted of unlawful driving of a vehicle, not unlawful taking or theft. Both the minutes of May 3, 2012, and the judgment state that the conviction was for taking a vehicle without permission. Since, as discussed above, the conviction for receiving stolen property can stand only if the conviction under Vehicle Code section 10851 was for unlawful *driving* rather than unlawful *taking*, respondent agrees with the correction appellant requests.

## DISPOSITION

The judgment shall be modified to provide that execution of sentence on count 2, receiving stolen property, is stayed, the stay to become permanent upon completion of the sentence on count 1. In addition, the judgment shall be modified to provide for 78 days

---

[5]Contrary to respondent's characterization, the trial court gave no indication it was considering appellant's failure to complete the financial form in making its orders regarding fees. As indicated above, the court expressly viewed appellant's failure to complete the financial declaration as a factor supporting imposition of an aggravated sentence (Pen. Code, § 1202.4, subd. (f)(9)(A)). It did not refer to this factor (or any other) in finding appellant had the ability to pay the probation report fee; the court simply did not address the issue of ability to pay.

16

of presentence custody credit plus 78 days of conduct credit, for a total of 156 credits against his sentence. Finally, the trial court's minutes and abstract of judgment shall be modified to reflect that the conviction under Vehicle Code section 10851 is for "unlawfully driving a vehicle." As so modified, the judgment is affirmed.

_____
Kline, P.J.

We concur:

_____
Haerle, J.

_____
Richman, J.

17