Filed 12/19/14  P. v. Wentworth CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048224 |
| v. | (Super. Ct. No. 11CF3483) |
| MICHAEL RICHARD WENTWORTH, | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

It is ordered that the opinion filed on November 19, 2014, be modified as follows:

1.          On page 9, delete the first sentence (beginning "Wentworth argues the prosecutor . . . ) in the first paragraph in Subsection C, and substitute the following sentence:  "Wentworth argues the prosecutor committed misconduct by disclosing to the jury he violated a special parole condition prohibiting him from contact with children."

2.          On page 9, in the first paragraph under Subsection C, in the third sentence (beginning "At trial, . . . ), insert the word "implied"

between "Wentworth's" and "statement" and delete the quote marks around "innocently" so that the sentence reads: "At trial, the court on the prosecutor's motion ruled the parole condition was admissible to impeach Wentworth's implied statement to investigating officers that he innocently contacted and spoke with Kim in this case."

3. On page 9, in the first paragraph under Subsection C, after the third sentence (beginning "At trial, . . . ), insert two new sentences as follows: "Specifically, Wentworth told the police he informed his parole officer that the person he contacted was a minor, which the jury could infer Wentworth intended to suggest his parole officer did not view the contact as a violation, and therefore supported Wentworth's innocence. The jury also could infer that manufacturing the claim he fully disclosed the contact to his parole officer reflected a consciousness of guilt."

4. On page 9, in the second paragraph under Subsection C, delete the first sentence, i.e., "In other words, the court ruled the probation condition was relevant to impeach Wentworth's claim he innocently contacted Kim because he lied by omission in failing to disclose the parole condition prohibiting the contact." Do not substitute a new sentence.

5. On page 11, following the citation string that ends ". . . *People v. Valdez* (2004) 32 Cal.4th 73, 125)," insert a new final paragraph of Subsection C, as follows:

Wentworth argues the prosecutor committed misconduct on redirect examination by stating to the parole officer that when "you say he had [no parole violations] in nine months," "[y]ou're obviously not referring to his conduct on the 27[th]; correct?" The parole agent answered, "Correct." There was no prosecutorial error in this exchange because defense counsel opened the door on cross-examination to this line of inquiry by eliciting that Wentworth had been law-abiding and free of parole violations in nine months under the agent's supervision.

2

The prosecutor was entitled to clarify that this period without violations did not include the present incident with Kim. Additionally, any conceivable error was harmless given the trial court ruled the jury properly was told Wentworth's parole condition precluded contact with minor children, and therefore readily could infer his contact with Kim constituted a violation. There is no probability of a different result, nor would we lack confidence in the verdict if defense counsel had objected to a line of inquiry he himself had opened on cross-examination.

This modification does not effect a change in the judgment. The petition for rehearing is DENIED.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.


3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL RICHARD WENTWORTH,<br><br>    Defendant and Appellant. | G048224<br><br>(Super. Ct. No. 11CF3483)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed.

Renee Rich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury found Michael Richard Wentworth guilty of annoying a child under age 18 and being previously convicted as a sex offender. (Pen. Code, § 647.6, subds. (a)(1), (c)(2); all further statutory references are to this code.) In a bifurcated proceeding, Wentworth admitted he previously was convicted of attempted robbery in Florida, three counts of committing lewd conduct in California (§ 288, subd. (a)), and his prior convictions were for serious or violent felonies under the Three Strikes law. The prior convictions elevated the child annoyance charge to a felony. (§ 647.6, subd. (c)(2).) The trial court sentenced him to state prison for 25 years to life under the Three Strikes law. Wentworth contends prosecutorial misconduct requires reversal, but as we explain there was no error and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On a December morning in 2011, 14-year-old Kim N. left her mother's office in Santa Ana and walked home. As she passed a parked car in which Wentworth sat in the driver's seat observing her, he made eye contact, smiled at her, and said "Hello." Kim smiled, said "Hello," and continued to walk. Wentworth slowly followed her in his car. He asked where she was going, what her name was, and how old she was. She responded her name was Kim, she was 14, and she was going home. He stopped his car, told her she was pretty, and offered to give her a ride. She refused, became afraid, and continued to walk. He drove ahead, pulled into a driveway, and maneuvered his car so that it faced the street.

Kim had to walk past Wentworth's car to reach her home. As she approached, Wentworth asked what grade she was in and what school she attended. She provided the information. She again refused his repeated offer for a ride. A passing motorist, Dung Nguyen, saw the encounter, pulled into the driveway, and asked Kim if

2

she knew Wentworth.  When she answered, "No,"  Nguyen confronted Wentworth: "Why are you talking to [her]?  You better leave her alone.  I'll call the cop [sic]."  Wentworth replied he did not do anything to her, but then drove away "pretty fast."  Nguyen exited his car, spoke with Kim, and called the police.

Minutes later, Wentworth called his parole officer and reported the encounter, but minimized it by omitting that Kim was a minor and by implying she was of age because he offered her a ride to work.  A parole restriction prohibited Wentworth from contacting minors.  According to Wentworth, he simply had been driving along when he saw a female who appeared to need help.  He contacted her and offered assistance, asking her if she was okay or needed a ride to her workplace.  Wentworth described how a man pulled up, spoke to Kim in another language, yelled at Wentworth, and threatened to call the police, at which point Wentworth left.  He said the contact lasted less than 90 seconds.

In a police interview, Wentworth told a detective he saw someone "scurry across the street."  He pulled up to the person and asked her, "Are you okay?  Do you need a ride?"  He asked for her age but did not know if she told him she was 14, 16, or 19.  He drove away because a Vietnamese man pulled into the driveway and aggressively yelled and cursed at him.  Wentworth spoke with his parole officer again after his arrest.  He admitted he called the girl "cute," contacted her more than one time, and said he thought she was 14.

Wentworth's prior lewd conduct convictions in 1996 involved his 10-year-old neighbor, Courtney.  He offered to teach her to swim, and on multiple occasions fondled her and touched her inappropriately in the pool.  After the swimming lessons, he sat her on his lap while she held the steering wheel of his car.  He would put his fingers in her bathing suit and touch her private areas.  In a later incident, Wentworth pushed Courtney to the floor, pulled her shorts and underwear down, and touched her private

3

area. When she told him to stop, he warned her to be quiet and put his hand over her mouth.

A few years later, Courtney sent a letter to Wentworth as part of a police investigation. In the letter she wrote, "'It hurts me to think about the times at the pool or the times in your car or the time at the Murrays' house when you pulled down my pants and touched me.'" Wentworth replied with a letter asking for forgiveness and declaring he was a "'changed man.'"

II

DISCUSSION

A.       *General Principles Concerning Prosecutorial Misconduct and Appellate Review*

Wentworth contends the prosecutor committed misconduct in several ways, which we review in turn below. As our Supreme Court has observed, "[T]he term prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 (*Hill*), overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) "Because we consider the effect of the prosecutor's action on the defendant, a determination of bad faith or wrongful intent by the prosecutor is not required for a finding of prosecutorial misconduct. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Under state law, prosecutorial misconduct involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'" [Citations.]" (*People v. Espinoza* (1992) 3 Cal.4th 806, 820.) State law misconduct necessitates reversal where it is reasonably probable the prosecutor's behavior affected

4

the verdict.  (*Id*. at p. 820-821.)  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." [Citations.]'"  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214-1215.)  Such pervasive misconduct requires reversal unless it is harmless beyond a reasonable doubt.  (*Hill*, supra, 17 Cal.4th at pp. 819, 844.)

The Attorney General argues Wentworth forfeited these contentions on appeal because he did not object to the prosecutor's conduct below.  (See *People v. Riggs* (2008) 44 Cal.4th 248, 298 [noting forfeiture generally applies "'"unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety"'"'].)  "A defendant's failure to object to curable misconduct . . . waives the issue for appeal."  (*People v. Wharton* (1991) 53 Cal.3d 522, 591.)

Wentworth contends counsel's failure to object should be excused as futile, citing *Hill*, *supra*, 17 Cal.4th at p. 821, because counsel "objected numerous times throughout the trial" and "only three" of those were sustained.  Wentworth concludes the court's negative response to some objections "indicated the court's willingness to allow the prosecutor free rein."  But unlike in *Hill*, here the trial court never chastised defense counsel, never criticized counsel in front of the jury, and never indicated for defense counsel to stop objecting.  The courtroom atmosphere was not "so poisonous that further objections would be futile."  (*People v. Hillhouse* (2002) 27 Cal.4th 469, 501-502.) There was no misconduct so serious that a curative admonition would have been ineffective.  Nothing in the prosecutor's actions was so serious or had the "electric effect" required to conclude a curative admonition would have been futile.  (E.g., *People v. Brophy* (1954) 122 Cal.App.2d 638, 652.)  We also reject the notion that the court's

treatment of unrelated objections shows that all objections would have been futile. (*People v. Arias* (1996) 13 Cal.4th 92, 159-160.)

Nevertheless, we reach the merits of Wentworth's misconduct contentions in reviewing his alternate claim that counsel rendered ineffective assistance of counsel (IAC) by failing to object. To obtain relief on an IAC claim under either the California Constitution or the Sixth Amendment, a defendant must show "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the petitioner to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the petitioner. [Citations.]" (*In re Wilson (*1992) 3 Cal.4th 945, 950, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)  The prejudice prong of the test "'is not solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.""'"  (*In re Hardy* (2007) 41 Cal.4th 977, 1019, citations omitted.)  We conclude there was no prosecutorial misconduct, and therefore no basis for defense counsel to object, and even assuming any error occurred, no basis for reversal exists because Wentworth suffered no prejudice.

B.              *The Prosecutor Did Not Introduce Evidence Outside the Record*

Wentworth contends the prosecutor's opening statement and other comments misled the jury to believe he engaged in criminal conduct outside the evidence presented at trial.  A prosecutor's improper comments can jeopardize the defendant's right to be tried solely on admitted evidence.  (*U.S. v. Young* (1985) 470 U.S. 1, 18; accord, *Hill*, *supra*, 17 Cal.4th at pp. 827-828 ["'clearly . . . misconduct'" for a prosecutor to "'"'effectively circumvent[] the rules of evidence'"'" by referencing excluded evidence].)  But the vague references on which Wentworth bases his claims of misconduct were too slight and ambiguous to constitute error.  Moreover, had counsel

6

objected, there is no reasonable probability of a different outcome or that Wentworth received an unfair trial, and his challenge therefore fails.

The prosecutor in his opening statement told the jury: "You may think as a juror, how am I supposed to determine someone's motivation? All right. . . . You can look at conduct to determine motivation. Okay. And that's what you're going to have to do here. [¶] But I'm going to give you more than that. Throughout this trial, not only are you going to hear about [Wentworth's] conduct and that interaction with that little girl, but you're going to hear about his history, some of it, okay. You're going to hear about a girl, her name is Courtney. And you're going to hear that when she was ten years old, Mr. Wentworth was a neighbor of hers. They are friends, family friends. She baby-sat for his dog. All right. [¶] When she was ten years old, he took her to a pool, gave her swimming lessons. When he did, he had her in the pool, and he started to fondle her. And you're going to hear about th[e] multiple times he did that." Wentworth argues that by suggesting the jury would only hear about "some" of his history, the prosecutor impermissibly suggested there were other unsavory incidents in his past, likely criminal. Wentworth notes that when the prosecutor questioned a defense investigator about a letter Courtney wrote to Wentworth at the behest of the police, accusing him of the misconduct, the prosecutor elicited that the letter was "part of a bigger investigation." The prosecutor also noted in a colloquy with a detective that the portion of Wentworth's police interview played in court was only 20 minutes of an interview that lasted an hour and 45 minutes. Wentworth claims this comment invited the jury to infer the remainder of the interview was likely devoted to investigating other criminal conduct. Wentworth also seizes on the prosecutor's statement in closing argument, reminding them of the audio recording they heard of the interview segment: "And, by the way, you have a CD where there's a portion. You didn't get to hear all of it. You can't speculate as to why. . . . But these are some of the statements."

7

These vague references, however, do not suggest other criminal conduct and do not amount to placing unadmitted or excluded evidence before the jury. Indeed, the prosecutor openly explored with the detective the portions of the interview not played for the jury, and elicited from the detective that Wentworth's alibi remained consistent in those portions and throughout the entire interview, i.e., he acted out of concern the girl was in peril crossing the street and walking alone. Thus, in context, the jury would not have inferred as Wentworth suggests that the remainder of the interview dealt with other crimes Wentworth allegedly committed.

Similarly, it is not likely the jury would conclude from the prosecutor's reference to "some" of his history and to Courtney's letter that authorities had conducted "a bigger investigation" of Wentworth's other, unprosecuted criminal conduct. In context, where the prosecutor explained Wentworth's relevant history included the pool incident with Courtney and her letter as part of that investigation, it is unlikely the jury understood the words "some" or "bigger investigation" to be veiled references to undisclosed evidence, but rather that the prosecutor edited his presentation to the most relevant evidence.

In any event, we presume the jury followed the trial court's instructions to decide the case on the evidence presented. (See *People v. Cruz* (2001) 93 Cal.App.4th 69, 73 [appellate court must presume the jury "'meticulously followed the instructions given'"].) The court instructed the jury that the "Evidence" consisted solely of "the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence." (CALCRIM No. 222.) The jury would understand from this instruction and the instruction not to investigate the facts or the law (CALCRIM No. 201) that evidence outside the trial was beyond its purview, and not subject to speculation. The trial court also instructed the jury unequivocally to decide the case "based only on the evidence that has been presented to you in this trial." (CALCRIM

8

No. 200.)  The few vague statements Wentworth highlights out of context do not furnish any reason to suppose the jury ignored these instructions, and therefore Wentworth fails to demonstrate any prejudice.

C.                *The Prosecutor Did Not Elicit Testimony in Violation of a Pretrial Ruling*

Wentworth argues the prosecutor committed misconduct by violating a pretrial ruling not to disclose to the jury his parole condition prohibiting him from contact with children.  The trial court, however, had specified its pretrial ruling did not preclude impeaching defendant with the parole condition, if it became relevant.  At trial, the court on the prosecutor's motion ruled the parole condition was admissible to impeach Wentworth's statement to investigating police officers that he "innocently" contacted and spoke with Kim in this case.  As the court explained in granting the prosecutor's motion: "I will allow it in.  I think you have a valid argument for the purpose that he lied; that that can come in to show that he made inconsistent statements" by lying to the police.

In other words, the court ruled the probation condition was relevant to impeach Wentworth's claim he innocently contacted Kim because he lied by omission in failing to disclose the parole condition prohibiting the contact.  The court explained, "Well, I mean . . . the jurors are going to find out that he is on parole because he made a phone call to the parole agent [in which he did not disclose contact with a child, but rather a female of unspecified age].  [¶] . . . [¶]  So, you know, it can come in for that purpose," namely, showing inconsistent statements to his parole agent and the police and for lying to the police about innocent contact.  As the court phrased it, "I'll let it in . . . to show that there w[ere] conflicting statements that would tend to show . . . potentially a consciousness of guilt when he . . . told the parole officer one thing and the police the other thing."

The trial court specified, however, that while "I'm going to let it in for this purpose," "[f]or now, I'm not going to let it in for the purpose of he *violated* his parole

9

by talking with children . . . ." (Italics added.) Unfortunately, the parole agent blurted out in a colloquy with the prosecutor his conclusion the contact was an "[a]utomatic violation of parole." The prosecutor did not elicit the conclusion. Rather, it arose as follows when he questioned the parole agent: "[Q]: Okay. And did [Wentworth] tell you that this person was a female? [¶] [A]: He did, yes. [Q]: And did he tell you that this person was 14 years old? [¶] [A]: He did not, no. [¶] [Q]: Did at any time he tell you that she was a minor? [¶] [A]: No, he did not. [¶] [Q]: Okay. If he had told you that she was a minor, would that have stuck out in your mind? [¶] [A]: Absolutely. [¶] [Q]: Okay. Is that because of certain conditions that he has currently placed on him regarding minors? [¶] [A]: Yes. [¶] [Q]: So if he told you that she was 14 or anything under 18 — [¶] [A] *Automatic violation of parole.* [¶] [Q]: As his parole agent, that would stick out in your mind? [¶] [A]: Absolutely, yeah. [¶] [Q]: Okay. To the best of your recollection, did he ever do that? [¶] [A]: No." (Italics added.)

A prosecutor commits misconduct when he or she elicits inadmissible evidence in violation of a trial court's ruling. (*People v. Crew* (2003) 31 Cal.4th 822, 839.) "When a prosecutor intentionally asks questions, the answers of which he knows are inadmissible, the prosecutor is guilty of bad faith attempts to improperly persuade the court or jury." (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1170.) A prosecutor is also "'under a duty to guard against inadmissible statements from his witnesses and guilty of misconduct when he violates that duty.'" (*Ibid.*) Wentworth relies on the prophylactic safeguard that "[e]very prosecutor who offers a witness to testify to conversations with an accused should know what the witness will relate if given a free hand." (*People v. Bentley* (1955) 131 Cal.App.2d 687, 690, disapproved on another ground in *People v. White* (1958) 50 Cal.2d 428, 430-431.)

Here, however, no misconduct occurred because the record shows that while the prosecutor limited the scope of his questions, the agent interrupted the

10

prosecutor and blurted out that Wentworth's conduct constituted a parole violation. Pursuing legitimate lines of inquiry does not support a claim of misconduct when, as here, nothing indicates the prosecutor purposefully elicited the response. (*People v. Chatman* (2006) 38 Cal.4th 344, 379-380; *People v. Valdez* (2004) 32 Cal.4th 73, 125.)

D.        *The Prosecutor Did Not Shift the Burden of Proof in Closing Argument*

Wentworth next isolates and seizes on a segment of the prosecutor's remarks in closing argument to suggest the prosecutor committed misconduct by attempting to shift the burden of proof and thereby require Wentworth to prove his innocence. The prosecutor stated, "Before I go any further, you ask yourselves why does a 52-year-old man contact a 14-year-old girl on the street, try to get her into his car, and call her 'pretty'? What other motivation could he possibly have [than to annoy her]? *You have to find some reason why he would legitimately be contacting her other than some abnormal sexual interest in that kid.*" (Italics added.) Wentworth does not assert anything else in the prosecutor's closing argument constituted similar misconduct.

"'[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements. [Citation.] [Citation.]" (*Hill*, *supra*, 17 Cal.4th at pp. 829-830; see *In re Winship* (1970) 397 U.S. 358, 364 [due process requires prosecution to bear burden of proving "'every fact necessary to constitute the crime'" charged].) Here, Wentworth claims the prosecutor's statement "impermissibly shifted the burden of proof by telling the jurors that they must find a legitimate reason why [he] contacted Kim, other than a sexual interest." We are not persuaded.

The prosecutor's isolated remarks did not amount to an attempt to shift the burden of proof. Instead, viewed in context, they were a legitimate rebuttal to Wentworth's testimony he innocently contacted and followed Kim. The prosecutor acknowledged at the outset of his closing argument that he bore the burden to prove the

11

elements of the offense "have been met with the facts." He explained he did not "have to prove to you what [Wentworth] intended to do with [Kim]. I don't have to prove to you that he intended to rape her or that he actually raped or — or whether it was a molest[ation] or there was a touching." But the prosecutor recognized and told the jury it was his burden "to prove child annoyance," and he explained the critical element of that offense "basically means when he contacted that little girl, his contact with her was motivated by an abnormal sexual interest." The prosecutor reviewed the evidence supporting Wentworth's conviction and throughout his remarks repeated that "he is guilty" only if he had proven the elements of child annoyance, but if not, "he is not guilty."

The prosecutor also addressed defense counsel's opening statement emphasizing "there are two sides to every story." The prosecutor responded, "That's true. I agree with him. The problem is, for his client, oftentimes there's one believable, reasonable version of events and there's one that's wholly unreasonable and unbelievable. And that's what we have here today." The prosecutor made the remark Wentworth now challenges in the context of these divergent views of the evidence. The prosecutor summarized his argument by emphasizing the jury had to decide whether the evidence showed Wentworth committed the offense or not. "It really comes down to this simple question: if you think that Mr. Wentworth contacted that 14-year-old girl to give her aid because she was in trouble or peril, and that's the only reason he had that entire course of conduct with her, then he is not guilty. If that's what you think he was doing, he is not guilty. Okay? [¶] But if you think there's another reason why he contacted that kid and that other reason is motivated by — in any way motivated by a sexual interest in that child, he is guilty. Simple as that."

The prosecutor did not commit misconduct. "It is not . . . misconduct to ask the jury to believe the prosecution's version of events as drawn from the evidence.

12

Closing argument in a criminal trial is nothing more than a request, albeit usually lengthy and presented in narrative form, to believe each party's interpretation, proved or logically inferred from the evidence, of the events that led to the trial. It is not misconduct for a party to make explicit what is implicit in every closing argument . . . ." (*People v. Huggins* (2006) 38 Cal.4th 175, 207.) The prosecutor may comment on the defendant's interpretation of the evidence without erroneously implying the defendant bears the burden of proof. (*People v. Lewis* (2004) 117 Cal.App.4th 246, 256-257.) We conclude that is what occurred here. The prosecutor vigorously presented his view of the evidence requiring a guilty verdict, but acknowledged it was the jury's province "to find some reason" to reject this view. In other words, in context, the prosecutor's statement that "[y]ou have to find some reason why he would legitimately be contacting her other than some abnormal sexual interest in that kid" was an appeal to the evidence as presented by the prosecutor. There was no error.

E.        *No Misconduct in Prosecutor's Hypothetical about Posttrial Juror Conversations*

Wentworth contends the prosecutor committed misconduct by "suggest[ing] to the jurors that their decision should be based on how others would feel about the case, [a] consideration[] outside the case's merits." Wentworth relies on a portion of the prosecutor's closing argument in which he asked the jury to review the evidence in the case by imagining a posttrial discussion with a friend, as follows. "You're going to go up to that friend and go, 'Okay. It's done. I can tell you.' Right? You say, 'here's what we got. We got — it's a child annoyance. Never heard of the crime before, but it's basically the guy does kind of something annoying or irritating towards a child that was motivated by sexual interest.' 'Okay. Give me the facts.' You say, 'well, the girl was walking down First Street. She is only 14 years old. And the guy

13

pulls up and says, 'Hey, do you need a ride?'" Now you stop there. Your friends's like 'you're kidding, right? Taxpayer dollars. Seriously?' You say, 'No, No. I'm not finished. Not only does he offer her a ride, but she tells him "No" and she — well, first she ignores him, then tells him "No."'"

At this point, in an abundance of caution, the trial court called counsel to a sidebar outside the jury's presence to ensure the prosecutor focused on the evidence and to forestall a possible problem that arose in the then-recent case of *People v. Shazier*, review granted April 17, 2013, S208398. There, the prosecutor asked the jury to consider what their friends and family would think if they returned a "Not true" finding in a case alleging the defendant was a sexually violent predator. The prosecutor's hypothetical in that case abandoned any focus on the evidence, and instead constructed a posttrial scenario in which the jurors were met with a "Oh, wow" community reaction expressing disapproval if they found for the defendant. "[I]magine if you found the petition to be not true in this case. [Can] you explain this to people that you work with, or friends, or neighbors. What did you do? Well, we found the petition to be not true. Oh, wow. That's interesting. Did the person—" (*People v. Shazier* (2014) 60 Cal.4th 109, 143, fn. 14, 145 (*Shazier*) [upholding Court of Appeal's conclusion that these and other comments raised an improper "specter of outside social pressure and community obloquy"].)

Here, the trial court explained in the sidebar, "[Y]ou can't basically say — asking what friends and family would think if you return not guilty verdicts, Okay," and the prosecutor agreed, clarifying, "Just so I'm clear, your Honor, that's not my — that was not my intention. . . . [B]asically where I'm going, your Honor, is that once I get through the facts, that is it reasonable to think he was doing it — like as you're telling that — when you're done telling that story, is it reasonable to think he was doing

14

anything other than —" The court interjected, "Based on — if you say based on the evidence," which the prosecutor acknowledged.

Back in the courtroom, the prosecutor resumed his argument in the following manner: "What I was saying, you're talking to this person as a normal person. Not as a juror, just as a regular guy, gal, whatever. Right? And you're walking through those steps, and you're saying contacts the girl. She says 'no.' Keeps contacting the girl. She says 'no.' Follows the girl. Drives along next to the girl. Pulls ahead of the girl. Waits for the girl. Continues to ask the girl questions. She is 14, by the way. All that, you might say still — you may still — I mean, that's enough, but you may still say, '[Y]eah, really struggling with it.' Then you say, '[O]h, by the way, we also know he has got a predisposition for minors. He has previously molested a ten-year-old.' Right? How do you put that all together based on the evidence as you heard it from the stand? And there's only one reasonable conclusion. You finish that story, say, "[Y]eah, we found him guilty based on that,' that makes sense."

Wentworth argues the prosecutor's argument crossed the line the trial court anticipated below and the Supreme Court confirmed in *Shazier*. Not so. The Supreme Court did not preclude a "prosecutor's rhetorical use of a hypothetical conversation" as a "device to work through" the evidence in a case. (*Shazier*, *supra*, 60 Cal.4th at p. 144.) Rather, the court explained that with the prosecutor's "Oh, wow" expression of community disbelief and similar comments: "The prosecutor must have understood that jurors might interpret his remarks as a warning about the social consequences they would face if they failed to ensure the secure confinement of a dangerous sex offender. Indeed, the prosecutor pressed home this implication by telling the jurors that, unless they avoided all conversation about the case, they would 'have to explain' to their family and friends how they had carried out their civic responsibility 'for the last two and a half or three weeks,' [and by] then arguing at length that they would not be able to give a

15

satisfactory explanation.  The import was clear, and it cannot be condoned."  (*Id.* at p. 145; see *People v. Sattiewhite* (2014) 59 Cal.4th 446, 484 [impermissible to sway jurors with "public opinion or public feeling"].)

Here, in contrast, the prosecutor made no remarks suggesting public disapproval and instead focused on the hypothetical solely as a device for the jury to work through the evidence.  The prosecutor even acknowledged a juror might have a reaction of "really struggling with" a verdict, but pointed the jury to the evidence to reach their conclusion, not any sense of community reaction or disapproval.  In summarizing Wentworth's conduct in his encounter with Kim and his prior history with Courtney, the prosecutor asked the jury, "How do you put that all together based on the evidence you heard from the stand?"  There was no misconduct.

Wentworth's claim of cumulative error based on the different categories and instances of prosecutorial error he asserts also fails.  Absent errors to cumulate, the cumulative error doctrine does not apply.  (*People v. Staten* (2000) 24 Cal.4th 434, 464.)

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

16